IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Tethyan Copper Company Pty Limited,

    Level 9, The Quadrant
    1 William Street
    Perth 6000
    Australia

        *Petitioner*,

  v.

Islamic Republic of Pakistan,

    The Solicitor
    Ministry of Law and Justice
    R Block, Pak. Sectt.
    Islamabad
    Pakistan

        *Respondent*.

**Civil Action No. _____**

## Petition to Enforce Arbitral Award

Petitioner Tethyan Copper Company Pty Limited ("TCC") brings this action to enforce an arbitral award (the "Award") issued on July 12, 2019 in ICSID Case No. ARB/12/1 against Respondent, the Islamic Republic of Pakistan ("Pakistan"), following arbitration proceedings conducted in accordance with the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"). Pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a, arbitral awards issued under the ICSID Convention are not subject to collateral attack and must be enforced and given the same full faith and credit as if the award were a final judgment of a court in the United States.

Accordingly, TCC requests that this Court (1) enter an order enforcing the Award in the same manner as a final judgment issued by a court of one of the several states, and (2) enter judgment against Pakistan and in TCC's favor in the amounts specified in the Award.

A certified copy of the Award is attached as Exhibit A to the Declaration of Matthew S. Rozen ("Rozen Declaration"), Exhibit 1 hereto.  Copies of the Tribunal's Decision on Jurisdiction and Liability ("J&L") and Decision on Respondent's Application to Dismiss the Claims ("ADC"), which are incorporated by reference into the Award, *see* Award ¶¶ 4, 19, 21, are attached as Exhibits B and C, respectively, to the Rozen Declaration.  A copy of the ICSID Convention is attached hereto as Exhibit 2.

## Parties

1. Petitioner TCC is a company constituted and registered under the laws of the Australia.

2. Respondent Pakistan is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1602-1611.

## Jurisdiction and Venue

3. This Court has subject-matter jurisdiction over this action pursuant to the FSIA, 28 U.S.C. § 1330(a), because this is a "nonjury civil action against a foreign state" on a claim "with respect to which the foreign state is not entitled to immunity" under the FSIA.  Pursuant to Section 1605(a)(1) of the FSIA, Pakistan is not entitled to immunity from this Court's jurisdiction in an action to enforce an ICSID Convention award because it has waived that immunity by agreeing to the ICSID Convention.  *See Tatneft v. Ukraine*, No. 18-7057, 2019 WL 2563159, at *1-2 (D.C. Cir. May 28, 2019) (per curiam); *Blue Ridge Investments, L.L.C. v. Republic of Argentina*, 735 F.3d 72, 84 (2d Cir. 2013).  Further, pursuant to Section 1605(a)(6)

of the FSIA, Pakistan is not immune from suit because this is an action to enforce an arbitral award governed by the ICSID Convention, which is a treaty in force in the United States for the recognition and enforcement of arbitral awards.  *Blue Ridge*, 735 F.3d at 85.

4. This Court also has subject-matter jurisdiction pursuant to 22 U.S.C. § 1650a(b), which provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction over actions and proceedings" to enforce awards entered under the ICSID Convention.

5. This Court has personal jurisdiction over Pakistan pursuant to the FSIA, 28 U.S.C. § 1330(b).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(1) and (4).

6. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. does "not apply to enforcement of awards rendered pursuant to the [ICSID] convention."  22 U.S.C. § 1650a(a). Thus, the FAA's jurisdictional requirements do not apply to this action.

## The Underlying Dispute

7. Through an April 1, 2006 novation agreement, TCC became a party to a joint venture agreement with the Government of Balochistan to explore potential copper and gold mining in Pakistan's Balochistan province.  Award at 2 (defining Novation Agreement), 6; J&L ¶¶ 217-222, 228, 1328.  In February 2011, TCC's wholly-owned subsidiary, Tethyan Copper Company Pakistan ("TCCP"), filed an application for a mining lease for the Reko Diq deposit in northwestern Balochistan.  J&L ¶¶ 506, 1264.  In November 2011, Balochistan's Licensing Authority rejected TCCP's application.  Award ¶¶ 2, 20; J&L ¶¶ 1264, 1329.

8. Because TCC is an Australian company, its investments are protected by the bilateral investment treaty between Australia and Pakistan—the Agreement between Australia and the Islamic Republic of Pakistan on the Promotion of Investments (the "Australia-Pakistan Treaty"), Exhibit 3 hereto.  The Australia-Pakistan Treaty is intended to "promot[e]" "investment

relations" and "strengthe[n]" "economic co-operation" between Australia and Pakistan "in accordance with the internationally accepted principles of mutual respect for sovereignty, equality, mutual benefit, non-discrimination and mutual confidence." Australia-Pakistan Treaty, pmbl., ¶ 2.

9.     Article 13(2) of the Australia-Pakistan Treaty provides that if a dispute between an investor of one contracting state and the other contracting state "cannot be resolved through consultations and negotiations," "either party to the dispute" may submit the dispute to the International Centre for Settlement of Investment Disputes ("ICSID") for arbitration under the ICSID Convention, provided that both Australia and Pakistan are parties to the ICSID Convention "at that time."

10.    Pakistan and Australia are both parties to the ICSID Convention.[1]  As a party to the ICSID Convention, Pakistan has consented to arbitrate disputes arising under the Australia-Pakistan Treaty pursuant to the ICSID Convention.

11.    On November 28, 2011, TCC filed a request with ICSID for arbitration under the ICSID Convention.  Award ¶ 9.  ICSID registered the request on January 12, 2012 and notified the parties of the registration.  *Id*. ¶ 10.

12.    An ICSID arbitral tribunal (the "Tribunal") was constituted on July 12, 2012. Award ¶ 11.  The Tribunal was reconstituted on September 10, 2012 after one of the arbitrators resigned and was replaced.  *Id*. ¶ 12.

13.    The Tribunal conducted 32 days of hearings:  a Hearing on Jurisdiction and Liability in Paris, France, from October 6 through October 17, 2014, Award at 12; a Hearing on Respondent's Application to Dismiss the Claims, in Paris, France from October 10 through

---

[1] https://icsid.worldbank.org/en/Pages/icsiddocs/List-of-Member-States.aspx.

October 15, 2016, which was continued in Hong Kong from December 3 to December 10, 2016, and in Paris, France on February 21, 2017, ADC ¶¶ 121, 149, 176; and a Hearing on Quantum in London, United Kingdom, from May 14 through May 24, 2018, Award ¶ 69.

14. On November 10, 2017, the Tribunal issued its Decision on Jurisdiction and Liability, a 371-page decision that is incorporated by reference into the Award, in which it decided, among other things, that:

> i. The Tribunal had jurisdiction to hear the claims submitted to it by TCC, J&L ¶ 688;
>
> ii. TCC's claims were admissible, J&L ¶ 688;
>
> iii. Pakistan had breached its obligations under the Australia-Pakistan Treaty by: (1) failing to accord fair and equitable treatment to TCC's investments within Pakistan's territory, in violation of Article 3(2) of the Australia-Pakistan Treaty; (2) effectively expropriating the value of TCC's investment, in violation of Article 7(1) of the Australia-Pakistan Treaty; and (3) impairing TCC's use of its investment, in violation of Article 3(3) of the Australia-Pakistan Treaty, J&L ¶ 1264, 1328-33, 1372; and
>
> iv. TCC was entitled to be compensated for all damages and losses resulting from Pakistan's breaches of the Treaty, in an amount that was to be determined in a later phase of the arbitration proceeding, J&L ¶ 1449;

Award ¶ 20.

15. In its Decision, the Tribunal found that Pakistan had—through the contractual and regulatory framework governing TCC's investment and Pakistan's own repeated assurances—created the legitimate expectation that TCC would be entitled to convert its exploration license into a mining lease, subject only to compliance with routine government requirements. J&L ¶ 958. The Tribunal noted that TCC had invested approximately $240 million in its exploration work and completed a feasibility study on the initial mine development of the area in direct reliance on that legitimate expectation. *Id.* ¶¶ 1328-1329.

16.     The Tribunal carefully considered TCC's mining lease application and concluded that TCC had fulfilled all applicable requirements and that Balochistan had rejected its application on pretextual grounds with the motive of implementing its own mining project and taking the value of TCC's investment for itself.  J&L ¶¶ 1264, 1329.  The Tribunal concluded that the denial of TCC's mining lease application deprived TCC of the entire value of its investment and thus constituted an unlawful expropriation of TCC's investment.  *Id.* ¶ 1328.

17.     The same day, the Tribunal issued its 421-page Decision on Respondent's Application to Dismiss the Claims, which is incorporated by reference into the Award, in which it considered and rejected Pakistan's application to dismiss TCC's claims.  Award ¶ 22; ADC.

18.     On July 12, 2019, the Tribunal rendered the 622-page Award, in which it ordered Pakistan to pay $4.087 billion in compensation, together with pre-award interest from November 15, 2011 until July 12, 2019 at a rate corresponding to the U.S. Prime Rate plus 1 percent, compounded annually.  Award ¶¶ 1858(II), (III).  In addition, the Award requires Pakistan to reimburse TCC $2,533,277.08 for the costs of arbitration and $59,447,596.60 for TCC's legal fees and other expenses.  *Id.* ¶¶ 1858(V), (VI).  The Award further requires Pakistan to pay post-award interest at a rate corresponding to the U.S. Prime Rate plus 1 percent, compounded annually, and specifies that the amounts shall be paid in US dollars without any reduction, claim or offset for taxes, other fiscal obligations or other reasons.  *Id.* ¶¶ 1858(IV), (VII), (VIII).

## Legal Basis for Relief

19.     The ICSID Convention establishes a framework for the resolution of investment disputes between a foreign sovereign party to the Convention and a national of another State party to the Convention.  The ICSID is the World Bank-affiliated arbitral institution that

administers arbitral proceedings under the ICSID Convention, including the arbitration at issue here.

20. The ICSID Convention provides that an award rendered under the auspices of ICSID is binding on the parties and is not subject to any appeal or to any other remedy except those provided for in the ICSID Convention itself. ICSID Convention, art. 53. Article 53 of the ICSID Convention further requires each party to an award to abide by and comply with the terms of the award except to the extent that enforcement is stayed. In other-words, in the absence of an order staying enforcement, an award is enforceable without delay.

21. The ICSID Convention provides that contracting parties must "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." ICSID Convention, art. 54(1). The ICSID Convention further provides that a contracting state "with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state." *Id*.

22. By unconditionally undertaking to recognize and enforce any ICSID award in its own territories pursuant to Article 54, subject only to the remedies provided for in the ICSID Convention, each Contracting State agreed that should an award be made against it, the competent authority of another Contracting State not only has the *jurisdiction* to enforce that award, but indeed an obligation under international law to do so (and where given the force of law in a particular municipal law, also a domestic law obligation). Accordingly, in becoming a State party to the ICSID Convention, and in particular pursuant to Article 54, a State submits to

the jurisdiction of the national courts of other Contracting States and/or waives any immunity from suit in those national courts at the stage of recognition and enforcement of an ICSID award.

23.     The United States is a contracting party to the ICSID Convention and is therefore obligated to enforce the Award as if it were a final judgment of a court in the United States.[2] That obligation is fulfilled by 22 U.S.C. § 1650a, which provides:

> (a) An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. § 1 *et seq*.) shall not apply to enforcement of awards rendered pursuant to the convention.

24.     Arbitral awards issued against a foreign state pursuant to the ICSID Convention may be enforced by bringing a plenary action in federal court in compliance with the requirements for commencing a civil action under the Federal Rules of Civil Procedure, and with the personal jurisdiction, service, and venue requirements of the FSIA. *See Micula v. Gov't of Romania*, 104 F. Supp. 3d 42, 49-50 (D.D.C. 2015); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100, 117-20 (2d Cir. 2017).

25.     Awards issued pursuant to the ICSID Convention are not subject to collateral attack in enforcement proceedings under 22 U.S.C. § 1650a. "Member states' courts are . . . not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award; under the Convention's terms, they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Mobil Cerro*, 863 F.3d at 102.

---

[2] https://icsid.worldbank.org/en/Pages/icsiddocs/List-of-Member-States.aspx.

26. The ICSID Convention therefore "reflects an expectation that the courts of a member nation will treat the award as final." *Id.*; *see also id*. at 118 (noting that an "ICSID award-debtor . . . [is] not . . . permitted to make substantive challenges to the award"); *see also* ICSID Convention, arts. 53(1), 54(1). Consistent with this mandate, 22 U.S.C. § 1650a(a) provides that the FAA "shall not apply to enforcement of awards rendered pursuant to the convention," thereby "mak[ing] [the FAA's defenses] unavailable to ICSID award-debtors in federal court proceedings." *Mobil Cerro*, 863 F.3d at 120-21. District courts thus enforce ICSID awards without allowing substantive challenges to enforcement of the awards. *See, e.g.*, *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. 1:17-cv-1457, 2018 WL 6605633 at *6 (D.D.C. Dec. 17, 2018); *Duke Energy Int'l Peru Investments No. 1 Ltd. v. Republic of Peru*, 904 F. Supp. 2d 131, 132-34 (D.D.C. 2012); *Republic of Panama v. Jurado*, No. 8:12-cv-1647, ECF No. 18 (M.D. Fla. June 13, 2013).

## Cause of Action and Request for Relief

27. Arbitral awards issued pursuant to the ICSID Convention are subject to mandatory enforcement in the courts of the United States, which must give those awards the same full faith and credit as a final judgment issued by a state court. 22 U.S.C. § 1650a(a).

28. The Award was rendered in accordance with the ICSID Convention against Pakistan and in TCC's favor. TCC is therefore entitled to enforce the Award's pecuniary obligations against Pakistan.

29. Accordingly, TCC is entitled to an order (a) enforcing the Award in the same manner as a final judgment issued by a court of one of the several states, and (b) entering judgment in TCC's favor in the amount specified in the Award.

WHEREFORE, TCC requests that the Court enter an order:

(a) enforcing the Award against Pakistan in the same manner as a final judgment issued by a court of one of the several states; and

(b) entering judgment against Pakistan and in TCC's favor ordering Pakistan to pay TCC:

    (i) $4.087 billion in principal;

    (ii) Pre-award interest on that principal at a rate corresponding to the US Prime Rate plus 1% thereon from November 15, 2011 until July 12, 2019, compounded annually;

    (iii) Post-award interest on that principal at a rate corresponding to the US Prime Rate plus 1% thereon from July 12, 2019 until the date of payment, compounded annually;

    (iv) $61,980,873.70 in costs and attorneys' fees relating to the arbitration; and

    (v) Post-award interest on those costs and attorneys' fees at a rate corresponding to the US Prime Rate plus 1% from July 12, 2019 until the date of payment, compounded annually.

Dated: August 9, 2019

Robert Weigel, N.Y. Bar #1809284
rweigel@gibsondunn.com
Jason Myatt, N.Y. Bar #4450599
jmyatt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone:  212.351.4000
Facsimile:  212.351.4035

Respectfully submitted,

/s/ Matthew D. McGill
Matthew D. McGill, D.C. Bar #481430
mmcgill@gibsondunn.com
Matthew S. Rozen, D.C. Bar #1023209
mrozen@gibsondunn.com
Katherine Maddox Davis,
   D.C. Bar #888283826
kdavis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Tethyan Copper Company Pty Limited*